**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL WILLIAMS,** | ) | |
| | ) | **No. 24 CV 1396** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **CITY OF CHICAGO,** *et al.*, | ) | |
| | ) | **May 13, 2024** |
| **Defendants.** | ) | |

**JOINT STIPULATION AND ORDER ON ELECTRONICALLY**
**STORED INFORMATION AND INADVERTENT DISCLOSURES**

Plaintiff Michael Williams and Defendant City of Chicago (together, the "Parties" or individually a "Party") hereby enter into this joint stipulation (the "Stipulation") regarding the protocol for production of documents, both hard-copy documents and electronically stored information ("ESI"), as well as the inadvertent disclosure of privileged information under Federal Rule of Evidence 502. In recognition of the obligations conferred on the Parties pursuant to Federal Rules of Civil Procedure 26, 33, and 34, and in recognition that Rule 34 specifically requires the production of ESI, the Parties have negotiated the way ESI will be searched and produced in this litigation.

This Stipulation is intended to supplement the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois. The Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials. This Protocol is intended to

promote a "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. This Stipulation does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary during this Action. This Stipulation is not intended to expand any document storage, preservation, or production requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the common law, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence. The Parties enter into this Protocol without waiving any objections that they may raise in response to discovery requests.

NOW, THEREFORE, it is hereby stipulated by and between the Parties as follows:

**1.    Definitions.**

(a)    "Bates Number" means a unique number affixed to each page of a document produced in the above-captioned action.

(b)    "Custodian" means the person who has custody and control of a Document, as defined herein.

(c)    "Database system" means any system that is accessible consisting of a group of integrated files, which is stored in one location or distributed across multiple locations in a network, and made available to several users, and consisting of a tabulation of corresponding information which can be searched, organized, classified, and accessed in multiple ways. "Database System" includes both corporate systems

as well as personal computers and personal electronic devices where ESI, as defined herein, could be stored.

(d)    "Document" means all written, graphic, or electronic matter (including but not limited to e-mails), however produced, or reproduced, and each thing from which information can be processed or transcribed. "Document" shall include both Hard-Copy Documents and Electronic Documents as defined herein.

(e)    "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to e-mail, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint), and spreadsheets (*e.g.*, Excel).

(f)    "Electronically Stored Information" ("ESI") means information that is stored in an electronic medium (including storage in a Database System as defined herein) and includes Electronic Documents and Metadata as defined herein. This includes but is not limited to: (1) data generated or maintained outside the United States; (2) electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, and Android devices); (3) voicemail, including Telephone or VOIP voice messages; (4) text messages and instant messages; and (5) collaboration files (*e.g.*, Slack and Teams).

(g)    "Hard-Copy Document" means Documents existing in paper or other tangible form at the time of collection.

(h)     "Load File" means a file provided with a production set of Document images, Metadata, or other information that facilitates the loading/correlation of such information into/within a Receiving Party's document review platform.

(i)     "Metadata" means corresponding data about an Electronic Document that resides in the unviewed area of an Electronic Document and is not seen when such a Document is printed.

(j)     "Native Format" means the format in which an Electronic Document was created and used (also referred to in terms of "Native Production").

(k)     "Non-Custodial Source" means any data source that is not kept or maintained by any particular Custodian, but which may contain potentially relevant Documents or ESI, including data sources used by any department, business unit, or division of a Producing Party, and Shared Storage Systems that may contain potentially relevant information, such as electronic mail systems, Backup Systems or Backup Media, or Archival Systems or Archival Storage.

(l)     "Producing Party" means any Party that produces Documents under this Stipulation.

(m)     "Receiving Party" means any Party that requests or receives Documents under this Stipulation.

(n)     "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

2.    **Preservation.**  All parties and counsel are responsible for taking reasonable steps to preserve unique ESI that is within their respective possession, custody, or control, and that is discoverable under Federal Rule of Civil Procedure 26(b)(1). All Parties' preservation efforts shall be sufficient to preserve any metadata that the parties agree to produce.

3.    **Date Range.**  The Parties will work in good faith to agree upon a date range for which data shall be preserved and collected pursuant to this Stipulation. However, to the extent that the Court has already approved date ranges with respect to discovery requests, such date ranges will govern absent further order of the Court.

4.    **Identification of Custodians.**  Within 28 days of the entry of this Order, each Party shall respond to those portions of the Interrogatories that call for the identification of individuals (including potential witnesses or individuals with information), including answers to the entirety of Plaintiff's Interrogatories to the Defendant City numbered 1, 2, and 4, pursuant to Federal Rule of Civil Procedure 33, and, at minimum, partial responses to Interrogatory number 5, to the extent those call upon the City to identify potential witnesses, people with knowledge, or other individuals.

By the same deadline, each Party shall identify their own respective and internal, individual custodians and shall submit a proposed list to the other Party. Each Party's list of custodians shall identify custodians from whom the submitting Party shall seek to collect Electronic Documents. Within 10 days after the exchange

of each Party's list of its own custodians, each Party shall exchange lists of additional custodians of the other Party from whom they seek to collect Electronic Documents.

Within 14 days after the Parties exchange of proposed lists of additional individual custodian, the Parties shall meet and confer to agree upon an initial list of individual custodians to be included as the sources to produce Electronic Documents. If the Parties cannot reach agreement by that time after a good faith effort to resolve the dispute, the Parties may make an application to the Court in accordance with the Court's Rules to seek a ruling as to the disputed custodians.

Following this initial process for identifying custodians, the Parties reserve the right to seek additional custodians to be included as the sources for production of Electronic Documents, and nothing in this stipulation or the process described above shall prejudice a party's ability to seek disclosure from additional custodians.

5.      **Identification of Non-custodial Sources and Not Reasonably Accessible ESI**.  Within 28 days from the entry of this Order, the Parties shall exchange lists of non-custodial sources within the Parties' respective possession, custody, or control potentially containing discoverable Electronic Documents relevant to a Party's claims or defenses.  Such lists shall include: (a) non-custodial sources from which the Party intends to collect Electronic Documents; (b) non-custodial sources from which the Party does not intend to collect Electronic Documents; (c) a description of each non-custodial source; (d) the date range of operation for each non-custodial source; and (e) sources of ESI that the Party believes to be not reasonably accessible.

6

**Non-Custodial Sources**

Within 21 days of the exchange of the Parties' respective non-custodial source lists, the Parties shall meet and confer to agree upon the list of non-custodial sources from which the Parties will collect Electronic Documents, respectively, and to resolve any issues regarding not reasonably accessible ESI. If the Parties cannot reach agreement by that time after a good faith effort to resolve any dispute as to the non-custodial sources, the Parties may make an application to the Court in accordance with the Court's Rules to seek a ruling.

**Not Reasonably Accessible ESI**

The Parties preliminarily agree that the following sources of ESI are not reasonably accessible:

(a)     Data stored in a backup system for the purpose of system recovery or information recovery if it is substantially duplicative of data that is more accessible elsewhere, including but not limited to: disaster recovery backup tapes and media; continuity of operations systems; and data or system mirrors or shadows.

(b)     Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

(c)     Data stored in Random Access Memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

(d)     Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

7

(e)     Data stored on printers, photocopiers, scanners, and fax machines.

(f)     Data stored as server, system, or network logs that are primarily used for maintenance, network analysis, or debugging purposes.

Nothing in this Stipulation prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).  In addition, notwithstanding this general agreement, a Party may request that the other party attempt to retrieve, identified Electronic Documents that otherwise fall within one of the categories (a) through (f) above.  If the Parties are unable to reach agreement with respect to such dispute, a Party may make an application to the Court in accordance with the Court's Rules to seek a ruling.  Nothing in this paragraph restricts or limits the discovery orders and rulings on objections that have been entered by Magistrate Judge Kim to date.

**6.     Scope of ESI Search and Collection**.

(a)     Collection.  The Parties shall collect ESI in a manner that enables them to satisfy the production requirements.  Among other production specifications, the Parties must ensure that the collection protocol preserves any metadata that the Parties agree to produce and familial relationships that the Parties must maintain for embedded files or emails with attachments.  All data must be processed using a single time zone.  To the extent reasonably practicable, the parties agree to produce their ESI standardized to Central Standard Time, (UTC-6:00) Central Time (US & Canada).

8

(b)    Collection Methods.  For all data sources, the Parties agree to apprise the other Parties about the method(s) they will use to collect data.  To the extent that a Party disputes the methods used by another Party, the Parties will meet and confer and, if the Parties cannot reach agreement after a good faith effort to resolve the dispute, the Parties may make an application to the Court in accordance with the Court's Rules to seek a ruling as to the method of collection.

(c)    Filtering.

(1)    Within 28 days of the entry of this Order, the Parties shall exchange their initial lists of proposed search terms and date ranges for filtering each Party's respective custodial sources such as emails and attachments.  Within 21 days of the exchange of initial search term and date range lists, the Parties shall meet and confer to agree upon the search terms and date ranges for each Party's respective filtering custodial sources. (To the extent that the Court has already approved date ranges with respect to discovery requests, such date ranges will govern absent further order of the Court.)  If the Parties cannot reach agreement by that time after a good faith effort to resolve the dispute, the Parties may make an application to the Court in accordance with the Court's Rules to seek a ruling as to the disputed search terms and/or date ranges.  The Parties reserve the right to modify or supplement the initial list of search terms and dates for filtering the custodial sources pertaining to emails and attachments.

(2)    With respect to other custodial and non-custodial sources that are amenable to search using search terms or other parameters, the parties shall, as

9

necessary, exchange proposed search terms or other parameters. The parties shall meet and confer regarding such proposed search terms or other parameters and, if they cannot reach agreement, the Parties may make an application to the Court in accordance with the Court's Rules to seek a ruling as to the disputed search terms or parameters.

(d)     Certain Electronic Documents Not Subject to Search Filters. If either Party determines there are Database Systems or other non-custodial sources of Documents that contain responsive information to which search terms cannot be applied, the Parties will meet and confer to determine an appropriate search protocol for those Database Systems or locations.

(e)     Search Obligation. The scope of the parties' ESI search and collection as set forth herein in no way diminishes the parties' obligation under the Federal Rules of Civil Procedure to search for and produce non-privileged, responsive Documents in their custody and control, unless otherwise agreed upon by the parties or ordered by the Court.

(f)     Known Responsive Materials. Use of the search methodology described in this Stipulation does not relieve a Party of its obligations to conduct a reasonable search and produce all non-privileged discoverable Documents of which it is aware.

7.     **Review and Production.** After searching for Documents under Section 6 of this Stipulation, the Parties will review their respective Documents for responsiveness and privilege either manually or via technology assisted review (as

10

agreed to by the Parties). The Parties may utilize analytics to increase the efficiency of the review process pursuant to Paragraph 7(c) below:

(a)     E-mail thread analysis may be used to reduce the volume of e-mails reviewed and produced. The produced e-mails must include all the responsive information from a thread, including attachments. For example, if an e-mail in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual e-mail and its attachments shall also be produced.

(b)     If the Producing Party wishes to use a search methodology(ies) to cull collected ESI or documents for review or production, the Producing Party and the Requesting Party will confer regarding such search methodology(ies) and search terms beforehand.

(c)     The Parties shall meet and confer about any other technology or process that may be appropriate to streamline discovery consistent with the objectives of Rule 1 of the Federal Rules of Civil Procedure including analytics or Technology Assisted Review.

8.     **De-duplication**. To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy. Each Producing party may remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. Near-duplicate documents shall not be removed without prior

agreement of the Parties. If global de-duplication is done across the complete collection, the "All Custodians" metadata field will list each agreed production custodian, separated by a semi-colon, who was the source of that document. If a Party is unable to comply with any of these requirements, they will promptly notify the other Parties and meet and confer, as necessary, to reach an appropriate resolution.

9. **Production Format**. All hard copy Documents and ESI shall be produced in accordance with the specifications attached hereto as Exhibit A unless the Parties agree otherwise, in writing, either generally or as to any specific production.

10. **Privilege Log**. Within a reasonable time after substantial completion of all Document production, the Producing Party must serve a privilege log in compliance with Rule 26(b)(5) identifying responsive Documents, plus family members to responsive Documents, withheld or redacted from the production based on attorney-client privilege, attorney work product, and/or other applicable privilege. The privilege log shall, in general, identify for each withheld or redacted Document based on privilege: (a) the Bates or Privilege ID number; (b) the author(s); (c) all recipients (including all cc or bcc recipients); (d) description of the type of document (i.e., memo, email, chart, etc.); and (e) the basis of any claimed privileged/immunity. If, because of the nature of the privileged information or to preserve the asserted privilege, a Party is unable to provide a privilege log that includes all these details for certain withheld or redacted Document(s), the Party must nevertheless produce a privilege log for such Document(s) that satisfies the requirements of Rule 26(b)(5). If

a Party challenges an entry on a privilege log or believes that an entry requires additional information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree after a good faith attempt to resolve the dispute, the matter may be brought to the Court by any Party.

**11.   Redactions**. Any redacted material must be clearly labeled on the face of the Document as having been redacted and shall be identified as such in the load file provided with the production.

**12.   Inadvertent Production of Privileged Information**. The provisions provided for in Federal Rule of Evidence 502 relating to the inadvertent production of privileged information shall apply to and govern document productions made in this action:

(a)   The production of privileged or work-product protected Documents, ESI or information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding where the conditions of Rule 502(b) are satisfied. This Stipulation shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502 and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S.C. § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

(b)   Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of Documents, ESI, or information for relevance,

responsiveness and/or segregation of privileged and/or protected information before production.

(c)     The reasonableness requirement of Rule 502(b) is "presumed satisfied."

(d)     If a Party or third party determines that it inadvertently or mistakenly produced information subject to a claim of immunity or privilege, it must provide the Receiving Party with written notice identifying the information or material and the basis for the immunity or privilege.  After being notified, a party: (1) must promptly return, sequester, or destroy the specified information and any copies it has; (2) must not use or disclose the information until the claim is resolved; (3) must take reasonable steps to retrieve the information if the party disclosed it before being notified; and (4) may promptly present the information to the court under seal for a determination of the claim.  Moreover, any notes or summaries referring or relating to any such inadvertently or mistakenly produced information subject to claim of immunity or privilege shall be destroyed, except to the extent they are contained in work product created by counsel for the Receiving Party prior to the written request for return or destruction in which case such privileged or protected information shall not be used or disclosed.  The Producing Party must preserve the information at issue until the claim is resolved.

**13.     Miscellaneous Provisions.**

(a)     Nothing in this Stipulation shall be interpreted to require disclosure of Documents and ESI that are not responsive to the Parties' Rule 34 Document

requests or Documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

(b)     The Parties reserve the right to object to discovery as provided by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.  The Parties do not waive any objections to the extent properly asserted.  All such objections are reserved and may be asserted at any time.

(c)     All productions are subject to this Stipulation.

(d)     The Parties will make good faith efforts to comply with and resolve any disputes concerning this Stipulation.  If a Party, notwithstanding good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance with such material aspect would be unreasonable or cause the Producing Party to suffer an undue burden, the Producing Party shall inform the Receiving Party promptly as to why compliance with the Stipulation is impossible, unreasonable, or would cause the Producing Party to suffer an undue burden.   Prior to seeking court resolution of a dispute under this Stipulation, the Parties agree to meet and confer in good faith to resolve, or narrow, the dispute.

(e)     The Parties reserve the right to discuss continued preservation of data throughout the litigation as discovery progresses.

(f)     The Parties may agree to modify or waive the terms of this Stipulation in writing signed by counsel for the Parties.  Such modification or waiver by the Parties shall be effective without the need for a motion to modify this Stipulation.  If either Party asserts that a modification or waiver of any term of this Stipulation is

15

needed and the Parties cannot reach an agreement on such modification or waiver, either Party may file a motion seeking a modification of this Stipulation. The Court shall have the power to enter an Order modifying or waiving any portion of this Stipulation.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**

## EXHIBIT A

## PRODUCTION SPECIFICATIONS

### ESI Collection

1.      ESI should be produced as Group IV, 300 DPI, single page TIFF images. Bates Numbers cannot contain spaces.  Documents that cannot be converted to TIFF (video, audio, applications, etc.) must be produced in native format.  All documents that can become unwieldy when converted to TIFF (spreadsheets, databases, source code, large diagrams, etc.) must be produced in native format.  For documents produced natively, the parties must create a single page place holder slipsheet bearing the beginning Bates Number and language indicating that the document is being produced in native format.  The parties reserve the right to request native files for any produced document.

(a)     De-NISTing.  The Parties do not need to produce common system files defined by the NIST library (http://www.nsrl.nist.gov/).

(b)     Zero-byte Files.  The Parties may filter out files identified as zero bytes in size and any logo files.

(c)     Embedded Objects.   Embedded objects or files such as Excel spreadsheets, Word documents, or audio and video files, shall be extracted and searched consistent with its category of ESI. Non-substantive embedded files, such as logos, need not be extracted.  All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol.  For production purposes, embedded files shall be identified as attachments to the parent

17

document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

2.     Load files for images must be provided in standard .OPT litigation image format, which shall provide:

(a)     The Bates Number for each image.

(b)     The relative path name(s) of each TIFF that represents an image.

(c)     The document boundaries for each document or family member grouping.

(d)     The load file shall be in the order that appropriately corresponds with each image file.

3.     Extracted text of a document must be delivered on a document level. All text for a single document should be contained within one file. The name of the file should be the beginning Bates Number of the document. If there are non-searchable electronic documents and the text cannot be extracted, the parties agree to provide OCR text for those documents.

4.     A TXT or DAT load file must be delivered with the requested fields and metadata as shown below. If specific fields cannot be provided for a particular document, the field should be left blank. In the case of email, the email will be the parent, and attachment(s) will be the child/children. Email parents and attachments/children must be Bates Numbered consecutively and sorted by email parent followed by attachment/child. Native-path and text-path should be included

in the DAT/TXT load file. The delimiters for the file must be as follows (Standard

Concordance Delimiters):

Comma –ASCII character 20 (¶)

Quote – ASCII character 254 (þ)

The first line shall be the header with field names indicating the contents of

each field, and each subsequent line shall contain the fielded data for each document.

Fielded data will be provided to the extent it is able to be extracted from the native

files.

| Metadata Fields | Description |
|---|---|
| Bates Beg | The Bates number or file identification number of the start of the document. |
| Bates End | The Bates number or file identification number of the end of the document. |
| Bates Beg Attach | The beginning Bates number or file identification number of the first document in the parent/attachment group. |
| Bates End Attach | The ending Bates number or file identification number of the last document in the parent/attachment group. |
| Email To | The recipient of the document or email. |
| Email From | The sender of the email. |
| Email CC | Persons copied on the document or email. |
| Email BCC | Persons blind-copied on the document or email. |
| Custodian | The person who maintains custody of the document or email. |
| All Custodians | Semi-colon delimited list of all custodians with custody of the file within the collected data set. |
| File Extension | The original extension of the file. |
| Author | The author of the document. |
| Date/Time Created | Date the document or email was created. Formatted in a single field as mm/dd/yyyy HH:MM AM/PM. |
| Date/Time Sent | Date the document or email was sent. Formatted in a single field as mm/dd/yyyy HH:MM AM/PM. |
| Date/Time Received | Date the document or email was received. Formatted in a single field as mm/dd/yyyy HH:MM AM/PM.. |

| Date/Time Last Modified | Date last modified for attachments and standalone files. Formatted in a single field as mm/dd/yyyy HH:MM AM/PM. |
|---|---|
| Date Last Printed | Date last printed for attachments and standalone files. |
| Email Subject | The subject line(s) of the email. |
| File Name | File name of the electronic document. |
| Original Folder Path | Original file path as maintained by the operating system or network. |
| Folder Name | Email or document folder information. |
| MD5, SHA-1, or SHA-1 Hash | The identifying value used for deduplication and authentication. |
| Processing Time Zone | The standardized time zone used for processing. |
| Confidential Designation | Designation of any confidentiality claim applied to the document. |
| Native File Path | File path to location of native format document. |
| Text Path | File path to extracted text (or OCR in the case of redacted images) of the document. |
| Participants | Text-specific field. Lists all participants in a chat or text conversation. |
| Message Type | Text-specific. Notes type of message (SMS, MMS). |
| Custodian Phone Number | Text-specific field. |
| Phone Model | Text-specific field. |
| OS | Text-specific field. Notes Operating System of the phone or mobile device. |
| OS Version | Text-specific field. Operating System version of the phone or mobile device. |
| Conversation ID | Text-specific field. Notes Conversation ID number of text/chat. |
| Conversation Start Date | Text-specific field. |
| Conversation End Date | Text-specific field. |
| Attach Count | Text-specific field. |
| Message Count | Text-specific field. |

5.     Each party will endeavor to produce via an electronic file transfer system when possible.  If the parties are unable to produce via electronic file transfer, the parties shall exchange documents on DVD-ROMS, CD-ROMS, thumb drives or portable hard drives.  If a production set is delivered on a hard drive, the receiving

party must, upon request, return that hard drive to the producing party at the conclusion of litigation.

**Hard Copy Collections**

1.      Image files must be produced in Group IV, 300 DPI, single page TIFF format. File names cannot contain spaces.

2.      A TXT or DAT load file must be produced with, at a minimum, the FIRSTBATES, LASTBATES, BEGATTACH and ENDATTACH. The delimiters for the file must be as follows (Standard Concordance Delimiters):

Comma –ASCII character 20 (¶)

Quote – ASCII character 254 (þ)

3.      OCR text must be delivered with all hard copy documents scanned into electronic format.  All OCR text should be document level .txt files. The name of the file should be the beginning Bates Number of the document (FIRSTBATES.txt.)

4.      An .OPT must be provided for images of hard copy productions.

5.      Unitization.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  In the case of an organized compilation of separate documents−for example, a binder containing several separate documents behind numbered tabs−the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending

document and attachment fields.  The Parties will make their best efforts to unitize the documents correctly.

**Folder Structure Data**

Within the volume folder should be a "Data" folder containing the load files.

1.      Images.  Within the volume folder should be an "Images" folder containing the page level .TIF images.  Image subdirectory folders should increment by 1.

2.      Natives.  Within the volume folder should be a "Natives" folder containing any native files that are produced.  A link (NativeLink) to the native files should be included in the .TXT/.DAT load file.  NativeLink should be the path to the native from the media volume.

3.      Text.  Within the volume folder should be a "Text" folder containing any text files that are produced.  Text should be provided at a document level.  A link (TextLink) to the file should be included in the .TXT/.DAT load file and TextLink should be the path to the text from the media volume.